UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY MARK READ, | ) |
| Petitioner, | ) No. CV-05-345-CI ) |
| v. | ) REPORT AND RECOMMENDATION TO ) DISMISS WITH PREJUDICE ) PETITION FOR HABEAS RELIEF |
| ALICE PAYNE, | ) |
| Respondent. | ) |

BEFORE THE COURT on Report and Recommendation is Respondent's Answer and Memorandum of Authorities, which is construed as a Motion to Dismiss under Rule 8, RULES GOVERNING § 2244 CASES. (Ct. Rec. 14, 19.) Petitioner is proceeding pro se; Assistant Attorney General Gregory J. Rosen represents Respondent. Petitioner claims his Sixth and Fourteenth Amendment rights were violated due to ineffective assistance of counsel in the state court proceedings. He claims his attorney failed to investigate and call witnesses who could have corroborated his defense of excusable homicide. (Ct. Rec. 1 at 5.) The court has reviewed the file and the Motions and is fully informed. The parties have not consented to proceed before a magistrate judge.

**FACTS**

Petitioner is currently imprisoned at McNeill Island Correctional Center in Steilacoom, Washington (McNeill) pursuant to

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 1

his Chelan County conviction for second degree murder and unlawful possession of a firearm. Petitioner was sixteen years old at the time of the incident.[1] The Court of Appeals summarized the facts:

> Mr. Read shot and killed Bruce Larson Jr. in a Wenatchee motel room on May 3, 1998. He was charged with second degree murder, first degree assault, and unlawful possession of a firearm. At trial, Mr. Read testified he pulled the gun to protect himself, and it fired by accident. He denied he intended to hurt or shoot anybody.
>
> After a bench trial, the court rejected Mr. Read's defenses of justifiable or excusable homicide and found he intended to kill Mr. Larson. The court thus found Mr. Read guilty of second degree murder and first degree assault. Based on evidence Mr. Read was a convicted felon at the time of the shooting, the court also found him guilty of unlawful possession of a firearm.

*State v. Read*, 100 Wn.App. 776, 778, 998 P.2d 897 (2000), *aff'd on remand,* 106 Wn.App. 138, 22 P.3d 300(2001), and *aff'd* at 147 Wn.2d 238, 53 P.2d 26 (2002).

The Court of Appeals affirmed the convictions for murder and possession of a firearm, and reversed the conviction for assault. *Read,* 100 Wn.App. at 793. Petitioner was re-sentenced to 294 months total confinement. (Ct. Rec. 17, Ex. 1 at 6.)

On March 11, 2004, Petitioner filed a Personal Restraint Petition (PRP) in the Washington Court of Appeals alleging, *inter alia*, ineffective assistance of counsel. (Ct. Rec. 17, Ex. 25.) Petitioner claimed defense counsel failed to investigate and present the testimony of witnesses he identified who could have corroborated his testimony that the gun had a tendency to misfire. He also

---

[1] Petitioner was not entitled to a declination hearing. RCW 13.04.030(1)(e)(v)(E).

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 2

alleged counsel was ineffective for failing to challenge defense witness Eva Zbien's assertion of the Fifth Amendment privilege.[2] (Ct. Rec. 17, Ex. 25 at 15.) In support of his PRP, Petitioner submitted his own Declaration and those of three individuals who stated they were present at another incident when the gun misfired. (Ct. Rec. 17, Ex. 25, App. D, E, F, G.)

The Court of Appeals dismissed the PRP; in denying review, the Washington State Supreme Court Commissioner reasoned:

> Mr. Read bases his ineffectiveness claim on trial counsel's failure to question three witnesses who would have supported his testimony that the gun he used in the fatal shooting misfired not long afterwards. But as the Chief Judge observed, Mr. Read has failed to show actual and substantial prejudice. *See In re Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994). Under all of the evidence, the trial court found that Mr. Read intended to kill the victim, rejecting his claim of accident. Mr. Read does not demonstrate a reasonable probability the trial court would have found otherwise had others testified that the gun had misfired on one occasion. *See State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The court based its decision on inferences arising from the immediate circumstances of the incident, not on any conclusion that the gun had operated properly.

(Ct. Rec. 17, Ex. 31 at 3.) In a footnote, the Commissioner further stated:

> And since the witnesses that Mr. Read claims counsel should have questioned would have provided only cumulative testimony that would not probably have changed the result, their testimony does not qualify as "newly discovered evidence." *See Lord*, 123 Wn.2d at 319-20.

(Ct. Rec. 17, Ex. 31 at 3, n.3.)

---

[2] This issue has not been raised in the federal Petition; therefore, the court will not discuss it.

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 3

**EXHAUSTION OF STATE REMEDIES**

Respondent concedes Petitioner's claim is exhausted. (Ct. Rec. 14 at 13.)

**FEDERAL CLAIMS: STANDARD OF REVIEW**

Habeas review of a state court decision on the merits is circumscribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The last reasoned decision of the state court is the opinion which is reviewed. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04, 111 S.Ct. 2590 (1991). Relief may be granted if the state court's adjudication on the merits of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. 2254(d)(1). The Supreme Court has held the clauses "contrary to" and "unreasonable application of" have independent meaning. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910 (2001); *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495 (2000). Therefore, § 2254(d)(1) requires a two-step analysis. Relief also may be granted if the state adjudication resulted in a decision that was "based on an unreasonable determination of facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). State courts are not required to cite Supreme Court law or even be aware of an applicable Supreme Court case, so long as neither the reasoning nor the result of the state-court decision contradicts that law. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362 (2002).

**DISCUSSION**

Petitioner asserts habeas relief should be granted because trial counsel "failed to investigate and present the testimony of

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 4

numerous witnesses who would have corroborated petitioner's trial testimony that the firearm he was wielding accidently discharged resulting in the victim's death." (Ct. Rec. 1 at 5.) Petitioner does not name the witnesses counsel allegedly should have called; however, it is assumed that the proffered Declarations submitted in the state PRP proceedings, and referenced in the state court orders attached to the Petition, comprise the testimony referenced by Petitioner. (Ct. Rec. 1, Appendix A; Ct. Rec. 17, Ex. 25.)

**A.   Proffered Evidence**

In Petitioner's proffered Declaration, he stated: "Before trial, I explained to my lawyer, Michael Zanol, that witnesses could confirm that the gun involved in my case had a tendency to misfire. I gave him the names and contact information for several people, including Scott Preston, Amanda Penfold, Patrick Zbien, Eva Zbien and Marcus Neuman."[3] (Ct. Rec. 17, Ex. 25, Att. D).

Ms. Zbien's Declaration corroborated Petitioner's testimony that she had given him her brother Patryk's gun the night of the shooting.[4] She stated, "Patryk was really drunk. At one point, a gun fell out of his waistband. I didn't think it was safe for him to have a gun in his condition." (Ct. Rec. 17, Ex. 25, Att. E at 1).

---

[3] Patryk Zbien died in a motorcycle accident in March 2003. (Ct. Rec. 17, Ex. 25, Att. E at 2.) A declaration from Marcus Neuman was not proffered.

[4] The gun was never recovered. At trial, petitioner testified he or a friend hid the gun after it misfired, that he did not know where it was, but that it would never be found. (Ct. Rec. 17, Ex. 36 at 356-57.)

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 5

Ms. Zbien also stated "Jeremy didn't want to take the gun at first. He didn't want to get in trouble." Regarding the gun that misfired, she stated, "I know it is the same gun Patryk had in Wenatchee." (*Id.* at 2.)

Amanda Penfold declared she was not present at the shooting in the motel room, and did not indicate she was present when Ms. Zbien gave a gun to Petitioner. She stated, however, that she was present when the gun "involved in the shooting" went off accidently. She declared, "I can't recall the exact date, but I know it was close to the time of that incident. We were near my house in Kent when the gun went off in Scott Preston's pocket." (Ct. Rec. 17, Ex. 25, Att. F at 1.)

Scott Preston declared he was not present at the shooting at the motel. He stated "I had possession of the gun that was involved in that shooting. I can no longer remember the exact date, but I know it was close to the time of the shooting. I was standing in front of Amanda Penfold's residence in Kent with the gun in my coat pocket. The gun went off without warning, leaving a hole in my coat. I was with Patrick Zbien (Eva's brother) and at least one other person. I can't remember at this time who else was there." (Ct. Rec. 17, Ex. 25, Att. G.)

**B.   Ineffective Assistance of Counsel (§ 2254(d)(1))**

The last reasoned state court decision is that of the Washington Supreme Court Commissioner denying review. (Ct. Rec. 17, Ex. 31.) There is no dispute the state court relied on the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984), standard, as noted in *State v. McFarland*, 127 Wn.2d 322, 334-35, 337, 899 P.2d 1251 (1995), in its rejection of Petitioner's claim of

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 6

ineffective assistance of counsel. *Strickland* is clearly established Supreme Court precedent for purposes of § 2254(d)(1). *Williams*, 529 U.S. at 405. A state court's decision must be "substantially different from the relevant precedent" of the Supreme Court before a federal habeas court can grant relief. *Id.* A state court decision will be contrary to clearly established Supreme Court precedent if the state court applies a rule of law that contradicts the established Supreme Court rule, or fails to arrive at the same result as clearly established Supreme Court precedent in a case with materially identical facts. *Id.*

Having relied on *Strickland*, the state court adjudication does not run afoul of the "contrary to" clause of § 2254(d)(1); the issue remains whether the state court unreasonably applied *Strickland* in finding no ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1). The "unreasonable application" clause is analyzed, not by reference to "a reasonable jurist" standard, but by determining whether the application was "objectively unreasonable" (as opposed to an incorrect or erroneous application). *Williams* 529 U.S. at 409. Under the *Strickland* standard, Petitioner must prove (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that such poor performance prejudiced the defense. *Strickland*, 466 U.S. at 691-92. In assessing an ineffective assistance claim, the court need not assess counsel's performance before examining the prejudice suffered. *Id.* at 697. If the ineffectiveness claim can be disposed of due to lack of sufficient prejudice, "that course should be followed." *Id.* To establish prejudice, a petitioner must show "there [was] a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Mere conclusory allegations of ineffective counsel are deficient. *See U.S. v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984). Thus, Petitioner must show that if trial counsel had investigated and presented the proffered corroborating evidence, there was a reasonable probability that the trial judge would have had a reasonable doubt concerning Petitioner's guilt. *Strickland,* 466 U.S. at 695; *Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir. 1990).

Here, the state court found the proffered corroborating testimony was cumulative and "would not probably have changed the result [of the bench trial]." (Ct. Rec. 17, Ex. 31 at 3, n.3.) Where failure to present corroborating evidence is the alleged deficiency, the fact that the evidence is merely cumulative does not, in itself, mean it would have made no difference as to the credibility of Petitioner's defense. However, where there is compelling evidence on which the judge based his decision, there is less likelihood of a reasonable probability that the trial outcome would have been different. *Greene v. Henry*, 302 F.3d 1067, 1072 (9th Cir. 2002) (strength of prosecutor's case not undermined by cumulative evidence); *see also Hall v. Luebbers*, 296 F.3d, 685, 693 (8th Cir. 2002) (impact of cumulative evidence minimal where other evidence reasonably supports jury's findings).

Petitioner was convicted after a bench trial, having waived a jury trial. (Ct. Rec. 17, Ex. 36, *Verbatim Report of Proceedings July 29, 1998*.) Thus, it is presumed the fact-finder did not consider inadmissible evidence. *State v. Bell*, 59 Wn.2d 338, 365,

368 P.2d 177 (1962).  The prosecutor's case included testimony from Kelan Walsh, Heather Bel, Josh Walsh, Sara Campbell, Kim McIntosh, and Veronica Flom, all of whom were in the room when Bruce Larson was shot.  Kelan Walsh testified he was in the room when Petitioner walked in and Chad Larson told him to go outside because nobody in the room knew him.  He testified Petitioner pulled out the gun, pointed it at Bruce Larson but did not shoot immediately, displaying the gun for two to three seconds before Bruce Larson was shot.  (Ct. Rec. 17, Ex. 36 at 123, 126.)  Ms. Bel testified she was able to positively identify Petitioner as the person who fired the shot which killed Bruce Larson.  She testified she saw Petitioner pull out a gun, hold it for about three or four seconds and point the gun toward Mr. Larson's chest.  She testified she clearly saw a finger on the trigger. (Ct. Rec. 17, Ex. 36 at 159, 163.)  Kelan Walsh's brother Josh identified Petitioner as the person who pulled out a gun, held it at head level for about five seconds, had his finger on the trigger and shot Bruce Larson.  He testified that Bruce Larson "froze" when Petitioner pointed the gun at him.  (Ct. Rec. 17, Ex. 36 at 181, 189.)  Sara Campbell testified she thought the person who shot the gun held the gun for about five seconds, and "Everybody froze.  It was very still and very quiet."  (Ct. Rec. 17, Ex. 36 at 216.)  Kim McIntosh testified she knew Petitioner from school and was able to identify him in court as the person who shot Bruce Larson. (Ct. Rec. 17, Ex. 36 at 227.)  Veronica Flom testified she saw Petitioner hold the gun long enough to ask Mr. Larson a question before the shot rang out.  She also testified that there was total silence before the shot occurred.  (Ct. Rec. 17, Ex. 36 at 288.)

Petitioner testified that earlier in the evening of the

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 9

shooting, Eva Zbien had given him the gun for safekeeping, and he had put it in his waistband before going to the motel room where Bruce Larson and the others were gathered.  He stated that during a verbal confrontation with Bruce and Chad Larson, he became frightened, pulled the gun out and reached the full length of his arm to show Chad and Bruce Larson that he was armed.  He testified when he reached out, the gun "just went off," and he did not remember pulling the trigger.  He testified he put the gun in his waistband and ran to a friend's truck where he put the gun in a coat pocket.  He stated that later the next day, when the gun was still in the coat pocket, a friend picked up the coat and the gun fired accidently.  (Ct. Rec. 17, Ex. 36 at 351-52, 354-55.)

The judge considered and weighed Petitioner's testimony, but rejected the accidental homicide defense based on testimony of the eye witnesses.  (Ct. Rec. 17, Ex. 35 at 3-7, 11.) The judge found:

> First, the court cannot believe based on the facts of this case and the weight the court is giving to the witnesses in the State's case that [sic] the credible evidence in this case that the death, Mr. Larson's death, occurred by mere accident or misfortune.  The weapon was pointed directly at Mr. Larson and the testimony has been that there was a delay between the pointing of the gun and the gun's going off.
>
> The court reaches the conclusion really because of the testimony the court has before it which indicates according to Ms. Flom that before Mr. Read fired this shot, he stated to Mr. Bruce Larson, "do you want to really fuck with me." That this is after the gun was displayed, the gun was raised, and the gun was pointed.  That evidence is presented not just by the testimony of Ms. Flom, but by the testimony of all the people who were in the room at the time, other than Ms. McIntosh who indicated she did not see the gun.  That does not appear to the court to be, and the court simply cannot conclude that Mr. Read was acting in any way in self-defense,

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 10

> was making any mistakes and from that, the court logically infers that Mr. Read who, by the weight of the evidence here, again based upon the testimony and the exhibits that have been presented to the court, had his finger on the trigger, discharged this firearm into Mr. Larson's chest. Mr. Read was not doing any lawful act by lawful means.

(Ct. Rec. 17, Ex. 35 at 10-12.)

The strength of the prosecutor's case, including testimony by eye witnesses that Petitioner aimed, spoke to the victim, and then shot, provided a sufficient evidentiary basis for the trial court's finding that the state proved intent beyond a reasonable doubt. In contrast, the declarants in Petitioner's proffered evidence state they were not present in the room at the time of the murder. There is not a reasonable probability that evidence of one misfiring under the circumstances described by the declarants would have changed the trial court's decision that the shooting was not an excusable homicide.[5] *See Johnson v. Baldwin*, 114 F.3d 835, 838 (9th Cir. 1997) (*citing Eggleson v. U.S.*, 798 F.2d 374 (9th Cir. 1986) ("ineffective assistance claims based on failure to investigate must be considered in light of government's case"). The state court's application of the *Strickland* standard was not unreasonable.

---

[5] A homicide is excusable when committed by accident or misfortune "in doing any lawful act by any lawful means, with ordinary caution and without any unlawful intent." *State v. Griffith*, 91 Wn.2d 572, 589 P. 2d 799, 802 (1979). If one of those elements is missing, the defense of excusable homicide is not available. *Id.* (*citing State v. Hedges*, 8 Wn.2d 652, 113 P.2d 530(1941).

REPORT AND RECOMMENDATION TO DISMISS WITH
PREJUDICE PETITION FOR HABEAS RELIEF - 11

**C.   Determination of the Facts (§ 2254(d)(2))**

Under the AEDPA, a habeas court also is authorized to grant relief when a state court decision is based on "an unreasonable determination of the facts in light of evidence presented."  28 U.S.C. § 2254(d)(2).  However, the AEDPA is clear that deference is given to the state court fact-finding process.  Petitioner must show the state court's fact-finding process was more than incorrect or erroneous, it must be shown so deficient as to be objectively unreasonable.  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (*citing Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).  Further, a state court's findings of fact are presumed correct unless Petitioner rebuts the presumption by "clear and convincing" evidence.  28 U.S.C. § 2254(e)(1).   *See Edwards v. Lamarque,* 439 F.3d 504, 510 n.2 (9th Cir. 2005) (discussing Supreme Court's suggestion that the standards of § 2254(d)(2) and § 2254(e)(1) merge)*; but c.f. Taylor,* 366 F.3d at 1001 (holding that § 2254(d)(2) standard applies to challenges of state court fact-finding based entirely on state court record, and § 2254(e)(1) standard applies only when new evidence is first presented in federal court).  Under both standards, Petitioner has not met his burden.

Petitioner has not challenged the trial court's findings. Rather, he challenges the state court's findings in light of the proffered evidence.  Petitioner presented evidence to buttress his defense theory of accidental shooting; he testified that after he pulled out the gun in the motel room, "it just went off."  He also testified the gun fired accidently the next day when it was in a friend's pocket.  Petitioner's counsel argued this theory at closing.  (Ct. Rec. 17, Ex. 36 at 51.)  However, Petitioner has not

shown by clear and convincing evidence how the proffered evidence would make the court's findings regarding what happened in the motel room unreasonable. *Torres*, 223 F.3d at 1108.  Based on the prosecutor's case, it was not objectively unreasonable for the judge to find, given all the evidence at trial, that Petitioner deliberately aimed the gun directly at Mr. Larson, spoke to him, had his finger on the trigger and discharged the gun into Mr. Larson's chest. (Ct. Rec. 17, Ex. 35 at 11.)  Even accepting as true the proffered declarations that the gun misfired during a later incident, the state court's findings regarding what happened in the motel room at the time of the shooting, were not "objectively unreasonable" when the entire record is reviewed. *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004) (state finding supported by the record is given great deference and is not "objectively unreasonable").  Petitioner has not rebutted with "clear and convincing" evidence the strong presumption that the state court's findings are correct. 28 U.S.C. 2254(e)(1); *Taylor*, 366 F.3d at 1001 ("[t]he evidence in question must be sufficient to support petitioner's claim when considered in the context of the full record bearing on the issue presented in the habeas petition").

## CONCLUSION

Based on the proceedings as a whole, the proffered evidence corroborating Petitioner's testimony that the gun misfired on one occasion a day after the shooting is not sufficient to show that defense counsel's alleged failure to investigate was prejudicial or render the state court's determination of facts unreasonable. The proffered evidence simply would not have been sufficient to cause the judge to change his decision, which was based on compelling eye

witness testimony. Further, the presumption of correctness in the state court's findings has not been rebutted by clear and convincing evidence. Accordingly, there has been no demonstration the state court decisions dismissing the ineffective assistance of appellate counsel claim on collateral review was an "unreasonable application" of *Strickland* or based on an "unreasonable determination of the facts" in light of the proffered declarations.

**IT IS RECOMMENDED** Petitioner's claim be **DISMISSED WITH PREJUDICE**.

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within ten (10) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying any the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within ten (10) days after receipt of the objection. Attention is directed to Fed.R.Civ.P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *U.S. v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 73; LMR 4,

1  Local Rules for the Eastern District of Washington.
2      A magistrate judge's recommendation cannot be appealed to a
3  court of appeals; only the district judge's order or judgment can be
4  appealed.
5      The Clerk of the Court is directed to file this Report and
6  Recommendation and provide copies to Petitioner and counsel for
7  Respondent and the referring district judge.
8      DATED May 24, 2006.

10                     S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE